UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

| | |
|---|---|
| HALLMARK INSURANCE COMPANY, De SMET INSURANCE COMPANY; and NATIONAL CASUALTY COMPANY,<br>Plaintiffs<br><br>vs.<br><br>GAIL HOEFERT and AARON HOEFERT, as personal representatives of the ESTATE OF ANDREW JOSEPH HOEFERT; GAIL HOEFERT and KERRY HOEFERT, as Legal Guardians of B.E.H. (minor) and C.T.H. (minor); KEVIN TYCZ, as Personal Representative of THE ESTATE OF JENNIFER CHRISTINE HOEFERT; ERIC J. LUPKES; LOGAN HEALTH, d/b/a LOGAN HEALTH MEDICAL CENTER; PARTNERS UNITED FOR LIFE SAVING EDUCATION, d/b/a JEFFERSON VALLEY EMS & RESCUE; SCL HEALTH MEDICAL GROUP – BUTTE, LLC; DE SMET INSURANCE COMPANY OF SOUTH DAKOTA; and FEDEX CORPORATION,<br>Defendants | 4:22-cv-4069<br><br>MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

---

Pending before the Court is an interpleader action involving the insurance coverage for survivors of a tragic auto accident. De Smet Insurance Company of South Dakota (De Smet) has moved for summary judgment. (Doc. 62). The Hoefert Defendants (hereinafter Hoefert Estates) have resisted De Smet's motion, disagreeing with the proposed distribution of the funds that have been paid into the

1

Court. (Doc. 70). De Smet has replied. (Doc. 73). Neither Hallmark Insurance Company nor National Casualty Company has offered comments on the motion. For the following reasons, the Court grants the motion.

**BACKGROUND**

In the early morning hours of July 31, 2021, the Hoefert Family—Jennifer, Andrew, Jennifer's daughter, and the two young children of Jennifer and Andrew--were traveling on Interstate-90 in rural Montana. The driver of a Chevrolet Suburban crossed the center line, striking the Hoeferts' rental car, and killing himself and all occupants of the Hoefert car except the two young children. The latter were seriously injured and are currently under the guardianship of Gail Hoefert and Kerry Hoefert.

Plaintiff Hallmark insured the tortfeasor and filed this interpleader action to determine the liability of the insurance companies toward the survivors. Hallmark tendered $50,000, the amount of coverage in its policy. Two other insurance companies are involved. National Casualty insured the rental car occupied by the Hoefert Family, which carried coverage of $50,000 that has been tendered to the Court. De Smet was the insurance company of the Hoeferts, who had an underinsured motorist (UIM) policy of $500,000. De Smet has tendered $400,000 to the Court in satisfaction of the Hoefert Estates' claims.

De Smet has moved for summary judgment, arguing that its insurance policy is governed by South Dakota law, which provides that the amount of underinsured motorist coverage in its policy with the Hoeferts must be reduced by the $50,000 that National and Hallmark each paid. This would result in $400,000 as the total De Smet must pay to the Hoefert Estates. The Hoefert Estates do not contest that South Dakota law governs, but resist the argument with respect to calculation of UIM benefits. Their position is that Hallmark's $50,000 payment reduces the amount owed by De Smet to $475,000 and by National to $25,000. The Hoefert Estates reach this conclusion by arguing that the $50,000 paid by Hallmark should benefit both De Smet and National equally, and not accrue entirely to the benefit of De Smet. This calculation yields payments to the Hoefert Estates as follows: Hallmark payment of $50,000; De Smet payment of $475,000; and National payment of $25,000 for a total of $550,000 to the Estates. (Doc. 71, PgID 501; Doc. 70, PgId 476). The Estates further argue that whether De Smet and National should split the Hallmark funds is a matter of agreement between the two of them which the Court could address with a declaratory judgment dividing the funds.

**LEGAL STANDARD**

1. SUMMARY JUDGMENT

Fed. R. Civ. Pro. 56 provides as follows:

Rule 56. Summary Judgment

3

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. Pro. 56.

As many courts have emphasized, summary judgment is designed to implement the goal of the Federal Rules as a whole, which is to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Rule 56(c) requires that summary judgment be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). As the Eighth Circuit has noted, "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Celotex*, 477 U.S. at 327).

In reviewing a motion for summary judgment, a court examines "the record in the light most favorable to the nonmoving party ... drawing all reasonable

inferences in that party's favor." *Whitney v. Guys*, 826 F.3d 1074, 1075 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004)). See also *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987); *Rosebud Sioux Tribe v. Barnett*, 2022 WL 1689393, *2 (D.S.D. 2022). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

2. SUBSTANTIVE CLAIMS

   a. Choice of Law

The first argument in De Smet's motion for summary judgment is that South Dakota law should govern this dispute. (Doc. 63). The argument is supported by the following: the Hoeferts' insurance policy with De Smet provides that South Dakota law governs disputes, (Doc. 66-1, PgID 445); the policy was written by a South Dakota insurance company, (Doc. 66, PgID 425), for residents of the state, Doc. 1); De Smet has no offices in Montana, the location of the accident, (Doc. 66, PgID 425). Hoefert Estates have not challenged the assertion that South Dakota law applies. The Court agrees that South Dakota law governs this dispute.

   b. Insurance Contracts

Interpretation of an insurance contact is a question of law. *Union Ins. Co. v. Scholz*, 473 F.Supp.3d 978, 983 (D.S.D. 2020) (quoting *Ass Kickin Ranch, LLC, v.*

5

*North Star Mut. Ins. Co.*, 822 N.W.2d 724, 726 (S.D. 2012)). "An insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *North Star*, 822 N.W.2d at 727 (quoting *Stene v. State Farm Mut. Auto. Ins. Co.*, 583 N.W.2d 399, 402 (S.D. 1998)). An unambiguous policy will be enforced as written, unless statutory or policy considerations dictate otherwise. *Monroe v. Continental Western Ins. Co.*, 735 F.3d 783, 786 (8th Cir. 2013). Courts should give effect to all of the contract's provisions and avoid an interpretation that "renders some provisions redundant or useless." *Id.* at 787.

The insurance contracts at issue revolve around payments for underinsured (UIM) motorist coverage. The South Dakota Legislature has provided as follows:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

S.D.C.L. § 58-11-9.5.

The South Dakota Supreme Court interpreted this provision in *Nickerson v. Am. States Ins.*, which involved a claim for underinsured motorist compensation against the plaintiff's insurer under her policy of $100,000. 616 N.W.2d 468 (S.D.

6

2000). Plaintiff had received compensation from the tortfeasor and from the primary UIM carrier of $50,000 each. Because the amount she had received from both insurance companies equaled what her policy would provide, the court held she could not recover from her insurance company. The court's reasoning was as follows:

> [A]ll monies received from the tortfeasor and the UIM primary carrier are deducted from the excess UIM carrier's policy limits to calculate the amount owed to the insured. Because the UIM insurer is liable only for "uncompensated damages," the language of this "difference of limits statute" prohibits the stacking of UIM coverage from two policies.

616 N.W.2d at 470.

The court explained that S.D.C.L. § 58-11-9.5 is "clear and unambiguous" in stating "the insurance company agrees to pay its own insured for uncompensated damages." *Id.* at 471. The court clarified that the insured is "entitled to recover the amount of damages, up to the policy limits, for which she has not been compensated." *Id.* As a result, an insured would not be able to combine policies in some way to exceed the policy limits. As is evident, then, once damages are compensated to the amount of the policy, the UIM policy is unavailable.

Although the court found the language of the statute clear and unambiguous, thus obviating the need for extrinsic evidence, it analyzed the provisions of the policy in question and prior case law. The court determined that despite the payment of premiums for UIM, an insured is assured only of the maximum amount

7

authorized by the legislature absent the purchase of additional UIM coverage. *Id.* The rationale is the legislative purpose to provide for an amount the legislature deems "sufficient" to protect insureds. *Id.* at 471 (citing *Union Ins. Co. v. Stanage*, 454 N.W.2d 736, 739 (S.D. 1990) for interpretation of uninsured motorist provision). In sum, an insured has a right of recovery when "the insured has uncompensated damages up to the UIM policy limits without regard to the number of policies, vehicles, or the amount of premiums paid." *Id.* (citing *Winters v. Northwestern Nat'l Cas. Co.*, 838 F.Supp. 440, 443 (D.S.D. 1993)). The insured is not entitled to additional compensation, however, unless he or she has purchased additional coverage.

Furthermore, in *Elrod v. Gen. Cas. Co. of Wisc.*, the court determined that as a general proposition, "the insurer of a vehicle involved in an accident has primary UIM coverage for the passengers of that vehicle while the insurer of a passenger in that vehicle has excess coverage for that passenger." 566 N.W.2d 482, 487 (S.D. 1997) (cleaned up). The court added that a careful reading of the applicable policies was required to ascertain whether this rule applied and concluded it did. *Id.*

The court also has held that "the UIM insurer is entitled to deduct the amount paid by the tortfeasor when calculating the amount it owed to its insured," rejecting the suggestion that it adopt "a better rule" and treat UIM benefits as "add-

on coverage." *Great West Casualty Co. v. Hovaldt*, 603 N.W.2d 198, 201 (S.D. 1999). In this vein, the *Nickerson* court "agreed that South Dakota law is explicit and unambiguous in prohibiting double recovery." *Nickerson*, 616 N.W.2d at 472 (citing *Hovaldt*, 603 N.W.2d at 201).

The alternative to "double recovery" was broached in *Nickerson*, but not adopted by the court. *Nickerson,* 616 N.W.2d at 473 (Amundson, J., dissenting). The Justice argued that S.D.C.L. § 58-11-9.5 should be read to permit the deduction of funds received from the liability insurer only, and not from an additional UIM carrier. *Id.* In *Nickerson*, this would have meant that the recovery of $50,000 from the tortfeasor would be deducted from the plaintiff's recovery under her UIM policy of $100,000, but the recovery of $50,000 from the insurer of the driver would not be. The Justice emphasized that the damages suffered by the plaintiff exceeded her policy limits and there was no "double recovery" involved. *Id.* at 475. Nor was there "stacking" of policies if the word was given its proper meaning of endeavoring to add the insured's own policies together to increase recovery. *Id.* at 476. As a result, reading the plain language of the statute, the Justice would have permitted recovery from the tortfeasor's policy, the vehicle insurer's policy, and the plaintiff's own UIM insurance policy. *Id.*

Although Justice Amundson urged an interpretation of S.D.C.L. § 58-11-9.5 that may have yielded a so-called "better rule" such as in place in Minnesota, his

9

arguments were unavailing at the time and have not resulted in a legislative change to the statute. *Nickerson* remains the guiding authority in applying the UIM statute. It is noteworthy that the court has interpreted the difference in language in the uninsured motorist and underinsured motorist statutes differently. See, e.g., *Wheeler v. Farmers Mut. Ins. Co. of Nebraska*, 824 N.W.2d 102, 109 (S.D. 2012). This results in permitting stacking of uninsured motorist policies while prohibiting such with underinsured motorist policies. Compare *Phen v. Progressive N. Ins. Co.*, 672 N.W.2d 52 (S.D. 2003) (allowing "stacking" of uninsured policies) with *Nickerson*, 616 N.W.2d 648 (disallowing "stacking" of underinsured policies). See *Wheeler*, 824 N.W.2d at 111-12 (Zinter, J., concurring) (requesting legislative clarification to permit similar interpretation of uninsured and underinsured motorist statutes).

3. Insurance Contract Provisions Governing Hoefert Estates Claims

The insurance policy De Smet provided to the Hoeferts lists "C. Underinsured Motorist Bodily Injury -- $250,000 ea person, $500,000 ea accident." (Doc. 66-1, PgID 426). All parties to this action appear to agree that these are the pertinent terms. The De Smet policy further provides as follows in the LIMIT OF LIABILITY section, (Doc. 63, PgID 405; Doc. 31-1):

> Part D—Underinsured Motorist Coverage
>
> A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all

> damages, including damages for care, loss of services, or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
> 1. "Insureds";
> 2. Policies involved;
> 3. Claims made;
> 4. Vehicles or premiums shown in the Declarations;
> 5. Vehicles involved in the accident; or
> 6. Premiums paid.
>
> B. The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes but is not limited to the insurer(s) of such persons or organizations, including us. This reduction includes all sums paid under Part A of this policy. If settlement occurs between an "insured" and the insurer(s) of the "underinsured motor vehicle(s)", the limit of liability shall be reduced by the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the "insured's" "bodily injury."

The OTHER INSURANCE section of Part D of De Smet's policy for the Hoeferts reads as follows:

> If there is other applicable insurance available under one or more polices or provisions of coverage that is similar to the insurance provided by this coverage:
> 1. The maximum amount that may be paid from all policies that apply as primary or excess cannot exceed the greater of:
>     a. The maximum underinsured motor vehicle coverage limits required by law; or
>     b. The highest limits of underinsured motor vehicle coverage that the "insured" specifically requested under any one policy.
> 2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered

11

auto", shall be excess over any collectible insurance providing such coverage on a primary basis. However, any insurance we provide for a vehicle you do not own will be primary insurance if the vehicle is insured under a policy affording coverage to a named insured engaged in the "business" of:
    a. Selling;
    b. Repairing;
    c. Servicing;
    d. Storing; or
    e. Parking;
motor vehicles. This applies if an "insured":
    a. is operating the vehicle; and
    b. is neither the person engaged in such "business" nor that person's employee or agent.

Id.

The National Casualty Company policy for the Hoeferts' rental car has a Daily Auto Rental Endorsement providing UIM coverage. (Doc. 71-2). National has not contested its responsibility to pay $50,000 UIM compensation for the Hoeferts' damages.

The Hallmark Insurance Company policy on the tortfeasor provides for "25,000 per person/50,000 per accident." (Doc. 71-6, PgID 543). Hallmark initiated the interpleader action and recognizes its obligation to compensate Hoefert Estates in the amount of $50,000.

**ANALYSIS**

In addition to their serious physical injuries, the surviving children of the Hoeferts have experienced the tragic loss of their parents and older sister. Apart from the emotional impact, the economic loss has been and will continue to be

significant. (Doc. 70-2, 70-3). Payment of the insurance proceeds at issue in this case will compensate for only a part of the total losses.

In the context of this motion, there is a disagreement about how to calculate the proper payment of the insurance coverage but no disagreement about the pertinent facts. Hallmark Insurance Company has admitted liability and tendered the policy limits of $50,000. (Doc. 34, 37, 48). National Casualty has tendered its policy limits of $50,000. (Doc. 40). There is no indication National joins in Hoefert Estates' argument that it should receive a $25,000 offset based on the Hallmark tender, and further, that it should resolve with De Smet whether the remaining $25,000 offset should be claimed by National or De Smet. As the Court noted above, National has not submitted any comments to this motion for summary judgment.

The policy of the South Dakota Legislature expressed in S.D.C.L. § 58-11-9.5 and as interpreted by the South Dakota Supreme Court is that an individual seeking payment of funds pursuant to an underinsured motorist policy is entitled to funds up to the limit of that policy which represent otherwise uncompensated damages. Once the payment meets the UIM policy limits, no insurance company is required to pay any further amount as that is considered an excess of compensation. This is the case even though the individual's damages exceed the policy limits. Other states have adopted a different policy, but South Dakota has

13

adhered to the language of S.D.C.L. § 58-11-9.5 and *Nickerson*'s interpretation, despite invitations from South Dakota Supreme Court Justices to review the statute.

In the case at bar, the Hoeferts' insurance policy with De Smet provided for $500,000 in underinsured motorist coverage. The policy also provides in Section D OTHER INSURANCE that the maximum amount that will be paid is the "highest limits of underinsured motor vehicle coverage that the 'insured' specifically requested under any one policy." (Doc. 64, PgID 418; 31-1). This means that if a person with a De Smet policy of this type purchased, for example, an umbrella policy from another insurer which included underinsured motorist coverage of $500,000 and thought this was increasing the UIM coverage to one million dollars under both policies, the person would in fact receive no additional UIM coverage because of the language of the De Smet policy. Whether this was the case with the purchase of the additional UIM policy from National in this case is not clear. Regardless, the limits in the De Smet policy are in place in this case.

The insurance companies for the tortfeasor and rental car—Hallmark and National, respectively—have recognized their responsibility to pay the maximum per accident, which is $50,000 each. Those funds have been deposited with the Court. De Smet argues that these payments decrease its liability to Hoefert Estates by $100,000, resulting in a payment owed by De Smet of $400,000, which has

14

been deposited with the Court. Hoefert Estates disagrees with this computation, requesting that Hallmark's $50,000 payment be offset between National and De Smet equally, which is claimed would yield a total of $550,000 to be paid to the Estates.

S.D.C.L. § 58-11-9.5, as interpreted by the South Dakota Supreme Court, and the De Smet policy in force in this case place a limit on damages that can be recovered under an underinsured motorist policy. That is, the underinsured motorist policy of the insured person is required to pay only *uncompensated* damages up to the policy limits. In this case, because the Estates were compensated $100,000, De Smet owes only the amount of what is said to be "uncompensated damages" remaining, amounting to $400,000. The damages for which no compensation will be received clearly exceeds $500,000.

## CONCLUSION

De Smet has moved for summary judgment, arguing the issue presented is legal, not factual. De Smet asserts it is required to compensate Hoefert Estates the amount of the insureds' underinsured motorist coverage minus the compensation of $100,000 received pursuant to policies issued by Hallmark Insurance and National Casualty Company. Consequently, De Smet would owe $400,000, which has been deposited with the Court. The total amount Hoefert Estates would receive is $500,000.

Hoefert Estates argues the calculation should start with the $50,000 payment from Hallmark being retained by the Estates. Then add De Smet's policy limits, meaning at the outset, De Smet would be responsible to pay $500,000 to the Estates. Offset half of the Hallmark payment since there are two UIM policies, making De Smet responsible for $475,000. Then add the National payment of $25,000. The latter represents half of the amount owed under the National policy because half of National's payment would be offset by the Hallmark payment. The total for the Estates would be $550,000 and takes into account the fact that there are two UIM coverages involved in the case.

The barrier to accepting the Estates' method of calculating these payments is the South Dakota statute authorizing payment of underinsured motorist damages that are uncompensated and the provisions of the insureds' De Smet policy. Because Hallmark and National together compensated the Estates in the amount of $100,000, De Smet is responsible for only $400,000 under its policy with the Hoeferts.

Accordingly, IT IS ORDERED that DeSmet Insurance Company of South Dakota's Motion for Summary Judgment, Doc. 62, is granted.

Dated this 29th day of January, 2024.

BY THE COURT;

*Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

*Matthew Thelen*

16